[No. D011896. Fourth Dist., Div. One. Feb. 27. 1991.]

CHARLOTTE KOBEY, Plaintiff and Appellant, v.
ELAINE MORTON, Defendant and Respondent.

COUNSEL

Wittman & Fedynyshn, Michael P. Fedynyshyn and Stephen C. Hinze for Plaintiff and Appellant.

John J. McCabe, Jr., for Defendant and Respondent.

OPINION

**BENKE, J.**—Plaintiff Charlotte Kobey appeals an order granting mutual restraining orders against her and defendant Elaine Morton (Code Civ. Proc.,[1] § 527.6), contending Morton failed to comply with the procedural requirements for obtaining a harassment injunction. Reversed in part; affirmed in part.

### FACTUAL AND PROCEDURAL BACKGROUND

On December 21, 1989, Kobey filed a petition for an injunction prohibiting harassment and application for a temporary restraining order against Morton. According to the petition, Kobey's husband had recently died of AIDS, contracted from a blood transfusion, and Morton's husband had recently filed for divorce. On December 16, Morton had a private detective follow her estranged husband and Kobey. On December 19, Morton told her husband she could hardly wait until Kobey moved back into her home, which was being remodeled, so she could "tear [her] head off." Morton told people she had hired Attorney Marvin Mitchelson to file a lawsuit against Kobey, and she and a former wife of Kobey's late husband were going to attempt to claim Kobey was responsible for the Mortons' divorce. Morton falsely said Kobey was an AIDS carrier and accused her of having affairs while her late husband was alive. Morton claimed she had accepted a $2,500 fee from the National Enquirer for a story concerning Kobey, her late husband, and her family. She threatened Kobey's daughter and son and her late husband's two brothers. Kobey was in such fear for her own safety and that of her family that she employed security personnel to escort her to and from her home.

On December 21, 1989, the trial court issued an order to show cause and temporary restraining order against Morton, requiring her to stay at least 100 yards away from Kobey's 2859 Ocean Front Walk home. On December 22, it issued an amended order, providing Morton was allowed to enter and exit her 2869 Ocean Front Walk residence. On December 22, the amended order to show cause and temporary restraining order were personally served on Morton's attorney of record. The hearing was set for January 5, 1990.

On December 28, 1989, Morton's attorney filed a memorandum of points and authorities arguing Kobey's declaration was "riddled with hearsay" and that the true declarant was Morton's husband. Morton's declaration, filed the same date, stated she had "no objections to the Court on its own motion granting restraining orders on a mutual basis."

---

[1] All statutory references are to the Code of Civil Procedure.

Morton's declaration further stated as follows. Morton's husband had filed for dissolution of their marriage eight days after the November 1 death of Kobey's husband. On December 27, Kobey trespassed on Morton's property and attempted to enter 2865 Ocean Front Walk, the use and possession of which Morton's husband had been awarded in their dissolution action on December 15. In addition, Kobey had repeatedly called Morton's home, hanging up or leaving disturbing messages on the answering machine. Kobey arrived uninvited at parties Morton gave on the Memorial Day weekend, the Fourth of July, and New Year's Eve. Kobey also conspired with Morton's husband to get Morton out of the 2869 Ocean Front Walk residence. On November 30, Morton made plans to commit suicide.

On December 28, 1989, Morton's declaration and points and authorities were served on Kobey's attorney. Kobey then filed additional declarations.

At the hearing on January 5, 1990, Kobey objected to mutual restraining orders on the ground Morton had not filed a petition. The court continued the hearing to January 16. On that date, Kobey's attorney argued:

"And Charlotte Kobey objected to the mutual restraining order based on the fact that there was no petition filed by Elaine Morton. And I reviewed the statute, 527.6 . . . . I really couldn't find anywhere in the statute that would allow—unless the court on its own motion was to grant the mutuality of the restraining orders." The court opined it had the inherent power to grant mutual restraining orders when the interest of justice and keeping the peace required it, even though Morton had not specifically requested this in a petition. The court granted mutual restraining orders.

## DISCUSSION

Kobey contends because Morton failed to file a petition requesting an injunction, the court lacked jurisdiction to grant an injunction against her and her due process rights were violated.

Section 527.6 states in pertinent part:

"(a) A person who has suffered harassment . . . may seek . . . an injunction prohibiting harassment as provided in this section.

"(b) '[H]arassment' is a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the

plaintiff. 'Course of conduct' is a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of 'course of conduct.'

". . . . . . . . . . . . . . . . . . .

"(d) . . . The defendant may file a response which explains, excuses, justifies, or denies the alleged harassment or may file a cross-complaint under this section. At the hearing, the judge shall receive such testimony as is relevant, and may make an independent inquiry. If the judge finds by clear and convincing evidence that unlawful harassment exists, an injunction shall issue prohibiting the harassment. An injunction issued pursuant to this section shall have a duration of not more than three years . . . ."

■ Section 527.6 "was enacted 'to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California Constitution.' " (*Schraer* v. *Berkeley Property Owners' Assn.* (1989) 207 Cal.App.3d 719, 729-730 [255 Cal.Rptr. 453].) Its purpose is "to provide expedited injunctive relief to victims of 'harassment.' " (*Id.* at p. 730.) ■ In interpreting section 527.6, we must "ascertain the intent of the Legislature in order to effectuate the purpose of the law; . . . give the provision . . . a reasonable and commonsense interpretation consistent with that apparent purpose; . . . give significance, insofar as is possible, to every word or part, harmonizing particular clauses by considering them in the context of the whole; . . . take public policy into account; and . . . give great weight to consistent administrative construction." (*Id.* at p. 732.)

■ In her declaration, Morton said she had "no objections to the Court on its own motion granting restraining orders on a mutual basis." However, she filed no cross-complaint framing her allegations against Kobey. At the hearing, Kobey's attorney said "I really couldn't find anywhere in the statute that would allow—unless the court on its own motion was to grant the mutuality of the restraining orders." Especially in view of Kobey's express objection at the hearing to the lack of a petition, we do not view this as an implied concession the court had the power to grant mutual orders absent a pleading and without affording Kobey notice and an opportunity to respond to specific charges.

In determining section 527.6 requires the trial court to allow relevant oral testimony, the *Schraer* court observed:

"Although an initial temporary restraining order may be obtained ex parte on affidavit, the statute requires a more formal procedure for obtaining what approximates a permanent injunction.

"This more formal procedure is required by due process. The injunction issued under the statute at issue is quite different from the kind of injunction issued under . . . section 527, subdivision (a). Although the latter *preliminary* injunction may be issued on the basis of affidavit alone, the enjoined party still has the safeguard of a full trial on the merits to follow, . . .

"In contrast, the procedure for issuance of an injunction prohibiting harassment is self-contained. There is no full trial on the merits to follow the issuance of the injunction after the hearing provided by . . . section 527.6, subdivision (d)." (*Schraer* v. *Berkeley Property Owners' Assn.*, *supra*, 207 Cal.App.3d at p. 732, italics in original.)

Similarly, we believe section 527.6 calls for the formality of a cross-complaint before the court imposes on the plaintiff "what approximates a permanent injunction." The court's inherent power does not extend so far as to encompass an order without a petition to serve as a vehicle for that order. (Cf. *Marquez-Luque* v. *Marquez* (1987) 192 Cal.App.3d 1513, 1517 [238 Cal.Rptr. 172] [In a section 527.6 proceeding, neither that statute nor equity gave the court authority to evict the defendant from his dwelling.].) While we applaud the trial court's efforts to keep the peace in the highly emotional situation here, we cannot elevate this goal over the basic requirement of due process.[2]

The court abused its discretion in imposing mutual restraining orders.

### DISPOSITION

The portion of the order granting a harassment injunction against Kobey is reversed. In all other respects the order is affirmed.

Wiener, Acting P. J., and Nares, J., concurred.

A petition for a rehearing was denied March 19, 1991.

---

[2] Kobey claims Morton has been adjudged guilty of five counts of contempt for violating the harassment injunction. Even assuming relevance to the issue raised here, these matters are not part of the record before us.