[No. B097161. Second Dist., Div. Five. July 22, 1997.]

NETTIE L. GRANT, Plaintiff and Respondent, v.
OHMA ROSEMARIE CLAMPITT, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Sections 2 and 3 of the Discussion (and appropriate fns.) of this opinion are not certified for publication. (See Cal. Rules of Court, rules 976(b) and 976.1.)

COUNSEL

Craig Mordoh for Defendant and Appellant.

Nettie L. Grant, in pro. per., for Plaintiff and Respondent.

**OPINION**

**GODOY PEREZ, J.**—Defendant Ohma Rosemarie Clampitt appeals from the judgment enjoining her from harassing her neighbor, plaintiff and respondent Nettie L. Grant. For the reasons set forth below, we affirm but hold that enforcement of the judgment's concomitant costs award is stayed pursuant to the automatic stay provisions of federal bankruptcy law. (11 U.S.C. § 362(a).)

### FACTS AND PROCEDURAL HISTORY

A noisy radio and a long-simmering feud between an elderly woman and her former landlord have combined to raise the following question of apparent first impression: Is an action for a civil harassment injunction (Code Civ. Proc., § 527.6)[1] subject to the automatic stay provisions (11 U.S.C. § 362(a)) of federal bankruptcy law?

Only a brief summary of the facts is necessary. Plaintiff and respondent Nettie L. Grant used to live in a West Los Angeles apartment owned by defendant and appellant Ohma Rosemarie Clampitt. In 1988, when Grant testified against Clampitt in an action brought by a neighbor, Clampitt

---

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

evicted Grant. Grant moved to an apartment building down the block. Clampitt also owned a duplex next door to Grant's new apartment. In 1990, Clampitt moved into the upstairs unit of that duplex. Her unit and Grant's were now directly across from one another separated only by a driveway. Clampitt then began to play her radio very loudly, especially late at night.

In and around July 1995, Grant called Los Angeles police officers on several occasions to complain about the noise. Officers responded, knocked on Clampitt's door, and left phone messages for her, but the noise continued. On July 10, 1995, Grant filed a petition under section 527.6 seeking to enjoin the noise, to keep Clampitt 100 yards away from Grant and her car, and to stop Clampitt from following her or keeping her under surveillance.

When the trial began on July 24, 1995, Clampitt's lawyer complained to the court that Clampitt had been served with the injunction papers while she walked into federal bankruptcy court during her bankruptcy appeal. Counsel contended this was done in order to "disconcert" Clampitt before her appearance.[2] While Clampitt or her counsel mentioned the pending bankruptcy twice more during trial (by way of a question posed to Grant and during closing argument) there was never an objection that the harassment action should be stayed.

The trial was continued to September 7, 1995, and after two Los Angeles police officers testified about the noise they encountered when investigating Grant's complaints, and their unsuccessful efforts to stop it, the court granted the injunction. The court ordered Clampitt not to play her radio or television, or make any other noise that could be heard outside her apartment, between the hours of 10 p.m. and 8 a.m. Clampitt was ordered not to threaten, strike, or make physical contact with Grant, not to keep her under surveillance and not to follow her. Clampitt was to stay 100 yards from Grant except that, while living next door, Clampitt was to stay 20 yards from Grant and was allowed to walk past Grant's apartment to visit neighbors. Clampitt was also ordered to stay five feet away from Grant's car. The court extended its order to Grant's current landlord, Ann Poders, who testified at trial that she lived in the apartment under Grant and also heard the noise from Clampitt's radio. The court included Poders because she was arguably a member of Grant's household. On November 9, 1995, the court awarded Grant costs of $535.59.

---

[2]The bankruptcy action was filed by Clampitt after Grant obtained a judgment of nearly $300,000 against her for wrongful eviction. We asked for supplemental briefing on the nature and status of Clampitt's bankruptcy action, both at the time of trial and at the present. Clampitt's bankruptcy action was originally filed on June 24, 1994, under chapter 11, then later converted to a chapter 7 proceeding. At the time Grant's harassment petition was tried, the bankruptcy case was on appeal. According to Clampitt, it still is.

590

Clampitt's main contention on appeal is that Grant's action was subject to the automatic stay of 11 United States Code section 362(a) (hereafter "the automatic stay"). She also contends the court erred in limiting her right to present evidence, by granting the injunction as to unnecessary matters, and by including Poders in its judgment.

DISCUSSION

1. *The Automatic Stay Did Not Apply*

The filing of a bankruptcy action "operates as a stay, applicable to all entities, of— [¶] (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy action], or to recover a claim against the debtor that arose before the commencement of the [bankruptcy action]; . . ." (11 U.S.C. § 362(a)(1).) Subdivision (b) of that statute lists 18 specific exemptions from the automatic stay, none of which are applicable here.[3]

The automatic stay has two broad purposes. First, it provides debtors with protection from hungry creditors by giving them a "breathing spell" against all harassment, collection efforts and foreclosure actions. Second, it protects the debtor's creditors by preventing a race for the debtor's assets. (*Dean* v. *Trans World Airlines, Inc.* (9th Cir. 1995) 72 F.3d 754, 755-756.) Actions taken in violation of the automatic stay are void and without effect. (*Raczynski* v. *Judge* (1986) 186 Cal.App.3d 504, 510 [230 Cal.Rptr. 741].) Clampitt did not waive the stay by failing to raise it below. (*Maritime Elec. Co., Inc.* v. *United Jersey Bank* (3d Cir. 1991) 959 F.2d 1194, 1204; *In re University Medical Center* (Bankr. E.D. Pa. 1988) 93 B.R. 412, 416.)

Clampitt asks that we begin and end our inquiry with a credulous invocation of the automatic stay. We cannot.

While the scope of the automatic stay is broad, "[t]he requisite showing of interference with the [debtor's bankruptcy] estate must be present . . . to stay an action . . . ." (*In re Printing Dept., Inc.* (Bankr. E.D. Va. 1981) 20 B.R. 677, 679 [seller of goods permitted to

---

[3]These include criminal prosecutions, and actions: to establish paternity; to establish, modify, or collect alimony or child support payments; for certain setoffs by commodities brokers or repo participants; by state licensing agencies; to create or perfect statutory liens for ad valorem property taxes; and by governmental units to enforce that unit's police or regulatory powers. (11 U.S.C. § 362(b).)

proceed against issuer of debtor's letter of credit in seller's favor]; accord, *In re Rook* (Bankr. E.D. Va. 1989) 102 B.R. 490, 492 [automatic stay does not apply to an act or proceeding that does not affect property of the debtor's estate]; *Matter of Elrod* (Bankr. M.D. Ga. 1988) 91 B.R. 187, 189 [wife's divorce action filed while husband's bankruptcy petition was pending did not violate automatic stay because the stay protects the debtor's bankruptcy estate property, not his marital status].) While the scope of the automatic stay is broad, its reach is still limited by its underlying purposes. (*Rett White Motor Sales Co.* v. *Wells Fargo Bank* (Bankr. N.D. Cal. 1989) 99 B.R. 12, 14.)

■ Even though Grant's section 527.6 petition commenced an action against the debtor (Clampitt) which could have been brought before Clampitt's bankruptcy action was filed,[4] we hold that the harassment action was not subject to the automatic stay because it had nothing to do with Clampitt's bankruptcy and posed no threat to the bankruptcy court's jurisdiction.

■ In order to obtain a section 527.6 injunction, the plaintiff must show by clear and convincing evidence that he has been harassed, which is defined as "a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the plaintiff. 'Course of conduct' is a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of 'course of conduct.'" (§ 527.6, subds. (b), (d).)

■ Section 527.6 was passed to supplement the existing common law torts of invasion of privacy and intentional infliction of emotional distress by providing quick relief to harassment victims threatened with great or irreparable injury. (*Smith* v. *Silvey* (1983) 149 Cal.App.3d 400, 405 [197 Cal.Rptr. 15].) It was enacted to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California Constitution. (*Kobey* v. *Morton* (1991) 228 Cal.App.3d 1055, 1059 [278 Cal.Rptr. 530].)

Section 527.6 has been used where the victim has been stalked, threatened or otherwise seriously harassed. (See *Kobey* v. *Morton, supra,* 228 Cal.App.3d 1055 [victim followed by private detective hired by defendant,

---

[4]Grant's declaration in support of her petition alleged that Clampitt's conduct began in 1990, four years before Clampitt filed for bankruptcy.

victim's children threatened, victim threatened with legal action and physical harm, falsely accused of having AIDS and of causing the defendant's marriage to fail]; *Ensworth* v. *Mullvain* (1990) 224 Cal.App.3d 1105 [274 Cal.Rptr. 447] [psychiatrist/victim's former patient followed victim in her car and tried to stop victim's car in middle of street, repeatedly drove around her house and kept it under surveillance, made numerous phone calls, sent threatening letters, and threatened to commit suicide in victim's presence]; *Elster* v. *Friedman* (1989) 211 Cal.App.3d 1439 [260 Cal.Rptr. 148] [downstairs neighbors played stereo at extremely high volume, made false reports to animal regulation officers that upstairs neighbors/victims were harming their dogs, parked in victims' parking spaces, broke into their storage shed and removed their bicycles, and repeatedly rang their doorbell].)

Actions to enjoin such conduct simply do not interfere with a bankruptcy debtor's estate or threaten the automatic stay's role in protecting both debtor and creditors. Nor do we believe that Congress intended the automatic stay to reach such actions. While the facts of this case appear fairly benign when placed along the sliding scale of possibly harassing activities, many section 527.6 actions are the byproduct of far more terrifying conduct—from stalking and threats of violence to the infliction of actual physical harm. The essential purpose behind section 527.6—to provide expedited relief to harassment victims—would be thwarted if the victim had to wait out his harasser's bankruptcy action. Even though the victim could seek relief from the automatic stay (11 U.S.C. § 362(d)) the victim should not have to endure the costly and potentially dangerous delays involved in obtaining such relief.

A contrary rule would also require harassment victims to make sure their tormentor were not in bankruptcy, or, as here, face reversal of their injunction. Further, it is an invitation to mischief and misuse of the bankruptcy courts by harassment defendants who might file, dismiss and refile sham bankruptcies solely in order to delay their victims' right to injunctive relief.

■ While we have discussed the nature of section 527.6 actions in general, we hesitate to announce a blanket rule that the automatic stay is inapplicable to all such actions. Given the uncertainty inherent when trying to predict human affairs, combined with the inventive ingenuity of lawyers, we cannot preclude a factual situation where a section 527.6 action against a harasser in bankruptcy might somehow affect the bankruptcy action. We hold instead that the automatic stay does not apply to actions under section 527.6 against a defendant who files for bankruptcy unless the injunction action interferes with the bankruptcy case.

Turning to the facts of this case, requiring Clampitt to play her radio at a lower volume and to keep her distance from Grant could not possibly

interfere with Clampitt's bankruptcy estate. To paraphrase *Matter of Elrod*, *supra*, 91 B.R. at page 189, the automatic stay protects Clampitt's bankruptcy estate property, not her right to play her radio so loudly that it keeps her neighbors awake at night. Given the policies and purposes of both the automatic stay and section 527.6, we hold that the automatic stay did not apply to Grant's action under section 527.6. (*Rett White Motor Sales Co.* v. *Wells Fargo Bank*, *supra*, 99 B.R. at p. 14 [reach of automatic stay is limited by its purposes].) However, while the court was allowed to try the matter, enter a judgment and award costs, enforcement of the costs award should be stayed. (11 U.S.C. § 362(a)(3), (4); *In re Clark* (Bankr. E.D. Pa. 1987) 69 B.R. 885, 890.)

2., 3.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

For the reasons set forth above, the judgment is affirmed but enforcement of the costs award is stayed pursuant to 11 United States Code section 362(a). Respondent to recover her costs on appeal.

Turner, P. J., and Armstrong, J., concurred.

---

*See footnote, *ante*, page 586.