[No. B220483. Second Dist., Div. Five. Jan. 18, 2011.]

SHAOXING COUNTY HUAYUE IMPORT & EXPORT, Plaintiff and Respondent, v.
RANGA L. BHAUMIK, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of Discussion parts IV. and V.

COUNSEL

Ranga L. Bhaumik, in pro. per., for Defendant and Appellant.

Law Offices of Michael S. Magnuson and Michael S. Magnuson for Plaintiff and Respondent.

## OPINION

**KRIEGLER, J.**—A creditor of a bankrupt corporation sought to recover payment in state court from an individual based on an alter ego theory of liability. The individual argued that the alter ego claim belonged to the bankruptcy estate, because it alleged general injuries to the corporation that could establish a basis of liability for all corporate debts, and therefore, the state court action should be stayed. The trial court allowed the action to proceed to trial and found in favor of the creditor. On appeal, the individual contends that the action should have been stayed and the trial court erred at trial.

In the published portion of this opinion, we conclude that the creditor's action to hold the individual liable as an alter ego for a creditor's substantive causes of action against a bankrupt corporation was not the property of the bankruptcy estate. In the unpublished portion of this opinion, we conclude that the record on appeal is inadequate to enable review of the contentions of error at trial. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiff and respondent Shaoxing County Huayue Import & Export delivered textile products to International Trade Center Ltd. (ITC). ITC failed to pay for the goods, causing damages of $291,612.80. On January 18, 2007, Shaoxing filed a complaint against ITC for breach of contract and common counts. Shaoxing filed an amended complaint on February 7, 2007, adding defendant and appellant Ranga Bhaumik.

The complaint alleged that Bhaumik was the alter ego of ITC as follows: "[T]here existed a unity of interest and control between [Bhaumik] and [ITC], such that any individuality and separateness between [Bhaumik] and the corporation had ceased, and that [ITC] is and was the alter ego of [Bhaumik], who is responsible for the above described conduct. [¶] Commencing on or about March 13, 1992, and at all times subsequent thereto, [ITC] was a mere shell and sham without capital, assets, or shareholders. The company was intended and used by [Bhaumik] as a device to avoid individual liability and

for purposes of substituting a financially insolvent entity in place of himself. Adherence to the fiction of the separate existence for [ITC] as an entity distinct from [Bhaumik] would permit an abuse of the corporate privilege and would sanction a fraud in that [Bhaumik] caused the assets of [ITC] to be liquidated and distributed for his own benefit for purposes of avoiding and preventing attachment and execution by creditors, including [Shaoxing], thereby rendering the corporation insolvent and unable to meet its obligations."

In January 2009, ITC filed a chapter 7 bankruptcy petition. ITC notified the trial court and Shaoxing of the bankruptcy filing. Shaoxing served a subpoena on ITC and a notice to produce documents at trial on Bhaumik. ITC's attorney informed Shaoxing that collection efforts, including the continuation of any lawsuits and trials, were automatically stayed as a result of the bankruptcy filing.

On March 5, 2009, Shaoxing filed a trial brief addressing the alter ego claim against Bhaumik. Shaoxing argued that the evidence would show Bhaumik did not adhere to the requirements necessary to maintain ITC's separate corporate existence. Bhaumik's deposition testimony revealed that he was the general manager of ITC, but he did not remember whether he had contributed any funds when he formed the company and did not know whether the company had any directors, filed tax returns, had a bank account, had bylaws or minutes, or had ever issued shares. He acknowledged that ITC did not have the money to purchase goods from Shaoxing. Shaoxing argued that the evidence met the requirements to apply the alter ego doctrine by showing the separate personalities of ITC and Bhaumik no longer existed, and if the acts were treated as those of the corporation alone, the result would be inequitable.

Shaoxing voluntarily dismissed ITC. In July 2009, Bhaumik filed a trial brief in propria persona. Bhaumik argued that actions against individual shareholders and directors of the corporation based on alter ego liability should be stayed, because only the bankruptcy trustee had standing to pursue the alter ego claim. Bhaumik cited several cases, including *Steyr-Daimler-Puch of America Corp. v. Pappas* (4th Cir. 1988) 852 F.2d 132 and *In re Folks* (9th Cir. 1997) 211 B.R. 378, for the proposition that general alter ego claims belong to the corporation and become part of the bankruptcy estate, such that individual creditors no longer have standing to maintain an alter ego action. Bhaumik also argued that ITC was an indispensable party and the voluntary dismissal of ITC made the alter ego claim moot. Bhaumik stated that the evidence at trial would show the corporate existence of ITC had been properly maintained.

The parties appeared in the trial court on July 21, 2009. The proceedings were not reported and no settled statement under California Rules of Court,

rule 8.137, has been provided on appeal. The July 21, 2009 minute order states: "Matter is called for Hearing. Defendant's request to continue or stay trial is argued and denied. [¶] Both sides make an opening statement. [¶] David Ji is sworn and testifies for the plaintiff. [¶] Ranga Bhaumik is sworn and examined by the plaintiff pursuant to Evidence Code Section 776. [¶] Plaintiff's exhibits [a summary of unpaid invoices, two e-mails, sales confirmations and bills of lading] are admitted into evidence. Plaintiff's exhibit [notice to produce documents at trial] is marked for identification only. [¶] Both sides rest. Cause is argued. [¶] The court takes the matter under submission. Parties to be notified of the court's ruling via U.S. mail."

On July 28, 2009, the trial court found that ITC's obligation to pay for invoices totaling $291,612.80 was not contested. In addition, the court ruled as follows: "Defendant Bhaumik claims he has no individual responsibility for these claims. He asserts that [ITC] was a viable entity. However[,] he offers no evidence in support of his position. Plaintiff established that [ITC] was a corporation with only Mr. Bhaumik and his wife as shareholders, that nothing was paid for the shares, and that he can produce no records showing any financial actions of the corporation. Additionally, Bhaumik claims inability to produce bank account information [or] tax returns for I.T.C. He claims no knowledge of corporate meeting or minutes, is unable to produce any certificates showing issuance of stock. [¶] The court is satisfied by a preponderance of the evidence that defendant Bhaumik failed to maintain the corporate existence of [ITC] in anything but its name. Accordingly[,] judgment is entered against Ranga L. Bhaumik individually in the amount of $291,612.80 plus costs."

On August 31, 2009, the trial court entered judgment against Bhaumik in the amount of $291,612.80 plus costs. Bhaumik filed a timely notice of appeal.

## DISCUSSION

### I.  *Standard of Review*

We apply the de novo standard of review when the issues on appeal are purely legal. (*City of Santa Cruz v. Patel* (2007) 155 Cal.App.4th 234, 243 [65 Cal.Rptr.3d 824].) "When the decisive facts are undisputed, we are confronted with a question of law and are not bound by the findings of the trial court. [Citations.]" (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960].) However, where conflicting evidence has been resolved, "[t]he presumption on appellate review favors the correctness

of the judgment, and where there is a conflict in the evidence and the inferences to be drawn therefrom, an appellate court is bound to accept as true the evidence and inferences in accordance with the findings of the lower court. [Citation.]" (*Estate of Falco* (1987) 188 Cal.App.3d 1004, 1018 [233 Cal.Rptr. 807].)

"Whether property is property of the [debtor's] estate is a question of law reviewed de novo. [Citation.] Similarly, '[w]e review de novo whether the automatic stay provision of [section 362(a) of title 11 of the United States Code] has been violated.' [Citations.] De novo means review is independent, with no deference given to the trial court's conclusion. [Citation.]" (*In re Mwangi* (9th Cir. 2010) 432 B.R. 812, 818.)

## II. *Property of the Bankruptcy Estate Subject to the Automatic Stay*

■ Upon the filing of a bankruptcy proceeding, federal bankruptcy law imposes an automatic stay on all state and federal proceedings outside the bankruptcy court against the debtor and the debtor's property. (11 U.S.C. § 362(a)(1) & (2); *In re Schwartz* (9th Cir. 1992) 954 F.2d 569, 570–572.) There are 18 specific exemptions from the automatic stay, none of which is applicable here. (11 U.S.C. § 362(b).) "The automatic stay is self-executing and is effective upon filing the bankruptcy petition. (See 11 U.S.C. § 362(a).)" (*In re Marriage of Sprague & Spiegel-Sprague* (2003) 105 Cal.App.4th 215, 219 [129 Cal.Rptr.2d 261].) Section 362(a)(3) of title 11 of the United States Code provides for an automatic stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

"The automatic stay has two broad purposes. First, it provides debtors with protection from hungry creditors by giving them a 'breathing spell' against all harassment, collection efforts and foreclosure actions. Second, it protects the debtor's creditors by preventing a race for the debtor's assets. [Citation.]" (*Grant v. Clampitt* (1997) 56 Cal.App.4th 586, 590 [65 Cal.Rptr.2d 727].) The automatic stay prevents " ' "piecemeal diminution of the debtor's estate." ' " (*Cavanagh v. California Unemployment Ins. Appeals Bd.* (2004) 118 Cal.App.4th 83, 90 [13 Cal.Rptr.3d 7].)

■ "The bankruptcy estate includes all of the debtor's legal and equitable interests in property as of the commencement of the case. (11 U.S.C. § 541(a)(1).) The scope of section 541 is broad and 'property' includes causes of action. [Citation.]" (*Haley v. Dow Lewis Motors, Inc.* (1999) 72 Cal.App.4th

497, 503–504 [85 Cal.Rptr.2d 352].) **(3)** "Under the Bankruptcy Code the trustee stands in the shoes of the bankrupt corporation and has standing to bring any suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy. [Citations.]" (*Shearson Lehman Hutton, Inc. v. Wagoner* (2d Cir. 1991) 944 F.2d 114, 118.)

A bankruptcy trustee has no standing to sue third parties on behalf of the estate's creditors, but may assert only claims held by the bankrupt entity. (*Caplin v. Marine Midland Grace Trust Co.* (1972) 406 U.S. 416, 434 [32 L.Ed.2d 195, 92 S.Ct. 1678]; *Shearson Lehman Hutton, Inc. v. Wagoner, supra,* 944 F.2d at pp. 118–119.) "Although the line between 'claims of the debtor,' which a trustee has statutory authority to assert, and 'claims of creditors,' which *Caplin* bars the trustee from pursuing, is not always clear, the focus of the inquiry is on whether the Trustee is seeking to redress injuries to the debtor itself caused by the defendants' alleged conduct. [Citation.] If the debtor suffered an injury, the trustee has standing to pursue a claim seeking to rectify such injury. But, '[w]hen a third party has injured not the bankrupt corporation itself but a creditor of that corporation, the trustee in bankruptcy cannot bring suit against the third party.' [Citation.]" (*Smith v. Arthur Andersen LLP* (9th Cir. 2005) 421 F.3d 989, 1002–1003.)

"When the trustee does have standing to assert a debtor's claim, that standing is exclusive and divests all creditors of the power to bring the claim. [Citation.]" (*Ahcom, Ltd. v. Smeding* (9th Cir. 2010) 623 F.3d 1248, 1250.) "[S]tate law determines whether a claim belongs to the trustee or to the creditor." (*Ibid.*)

III. *Alter Ego Allegations Not Stayed*

Bhaumik contends that when ITC filed for bankruptcy, Shaoxing's alter ego allegations became the property of the bankruptcy estate and only the bankruptcy trustee had standing to pursue them. We conclude that Shaoxing's claims were not stayed by ITC's bankruptcy filing.

█ "The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests. [Citation.] In certain circumstances the court will disregard the corporate entity and will hold the individual share-holders liable for the actions of the corporation: 'As the separate personality of the corporation is a statutory privilege, it must be used for legitimate business purposes and must not be perverted. When it is abused it will be disregarded and the corporation looked at as a collection or association of

individuals, so that the corporation will be liable for acts of the stockholders or the stockholders liable for acts done in the name of the corporation.' [Citation.]" (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300 [216 Cal.Rptr. 443, 702 P.2d 601] (*Mesler*).)

■ The circumstances of an individual case determine whether the court will pierce the corporate veil and regard the corporation as the alter ego of its shareholders. (*Mesler, supra,* 39 Cal.3d at p. 300.) There are, however, two general requirements. (*Ibid.*) "First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone." (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538 [99 Cal.Rptr.2d 824].) Factors for the trial court to consider include the commingling of funds and assets of the two entities, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and use of one as a mere shell or conduit for the affairs of the other. (*Id.* at pp. 538–539.) "No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied." (*Id.* at p. 539.)

■ "An alter ego defendant has no separate primary liability to the plaintiff. Rather, plaintiff's claim against the alter ego defendant is identical with that claimed by plaintiff against the already-named defendant. [¶] A claim against a defendant, based on the alter ego theory, is not itself a claim for substantive relief, e.g., breach of contract or to set aside a fraudulent conveyance, but rather, procedural, i.e., to disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation where the corporate form is being used by the individuals to escape personal liability, sanction a fraud, or promote injustice. [Citations.]" (*Hennessey's Tavern, Inc. v. American Air Filter Co.* (1988) 204 Cal.App.3d 1351, 1358–1359 [251 Cal.Rptr. 859].) In applying the alter ego doctrine, the issue is not whether the corporation is the alter ego of its shareholders for all purposes, or whether the corporation was organized for the purpose of defrauding the plaintiff, but rather, whether justice and equity are best accomplished in a particular case, and fraud defeated, by disregarding the separate nature of the corporate form as to the claims in that case. (*Mesler, supra,* 39 Cal.3d at p. 300.)

■ The trustee of a bankrupt corporation can maintain an action against a defendant based on an alter ego theory if there is some allegation of injury to

the corporation that gives the corporation a right of action against the defendant. (*Stodd v. Goldberger* (1977) 73 Cal.App.3d 827, 833 [141 Cal.Rptr. 67] (*Stodd*).) For example, the trustee of a bankrupt corporation can maintain an action against corporate shareholders on an alter ego theory in order to recover property or pursue a right of action belonging to the bankrupt corporation, including an action to set aside fraudulent transfers or an action for conversion to recover assets of the bankrupt corporation. (*Id.* at p. 834.) However, the trustee of a bankrupt corporation "cannot maintain an action against defendants on an alter ego theory absent some allegation of injury to the corporation giving rise to a right of action in it against defendants. In the absence of any such allegation, the asserted cause of action belongs to each creditor individually . . . ." (*Id.* at p. 833.) "[A] trustee in bankruptcy may not enforce rights of action which belong to the creditors individually[,] because they are not rights in which the bankrupt claims an interest and are not assets of the estate in bankruptcy. [Citations.]" (*Id.* at p. 835.)

█ California law does not recognize a general alter ego claim by which a defendant may be held personally liable for a bankrupt corporation's debts in the absence of allegations giving the corporation a right of action against the defendant. (*Stodd, supra,* 73 Cal.App.3d at p. 71; *Ahcom, Ltd. v. Smeding, supra,* 623 F.3d at p. 1251.) Federal bankruptcy cases concluding that a general alter ego claim exists under California law independent of any underlying right of action held by the corporation have misread *Stodd.* (*Ahcom, Ltd. v. Smeding, supra,* at pp. 1251–1252; cf. *In re Davey Roofing, Inc.* (C.D.Cal. 1994) 167 B.R. 604, 608; *In re Folks, supra,* 211 B.R. at pp. 385–388; *In re Advanced Packaging and Products Co.* (C.D.Cal. 2010) 426 B.R. 806, 818–819.)

█ In this case, Shaoxing alleged Bhaumik was liable as ITC's alter ego with respect to money that ITC owed for breach of contract and common counts. Shaoxing did not seek to assert a right of action belonging to the corporation. Bhaumik has not argued that the alter ego allegations constituted a substantive right of action belonging to the corporation. We hold that Shaoxing's claims based on alter ego liability were not the property of ITC's bankruptcy estate and, therefore, the action was not subject to the automatic stay of the bankruptcy proceedings.

IV., V.[*]

. . . . . . . . . . . . . . . . . . . . . . . . .

---

[*]See footnote, *ante,* page 1189.

## DISPOSITION

The judgment is affirmed. Respondent Shaoxing County Huayue Import & Export is awarded its costs on appeal.

Armstrong, Acting P. J., and Mosk, J., concurred.