13-1707-cv
*Fillmore East BS Finance Subsidiary LLC v. Capmark Bank*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of January, two thousand fourteen.

PRESENT:    DEBRA ANN LIVINGSTON,
            SUSAN L. CARNEY,
                            Circuit Judges,
            JOHN G. KOELTL,[*]
                            District Judge.

_____

FILLMORE EAST BS FINANCE SUBSIDIARY LLC,

                  *Plaintiff-Appellant*,

    -v-                                        No. 13-1707-cv

CAPMARK BANK,

                  *Defendant-Appellee*.[**]

_____

                              MARK SLAMA (Mel P. Barkan, James Tracy, *on the brief*), Windels Marx Lane & Mittendorf, LLP, New York, NY, *for Plaintiff-Appellant*.

---

[*] The Honorable John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

[**] The Clerk of the Court is directed to amend the caption as set forth above.

GIL FEDER, Reed Smith LLP, New York, NY, *for Defendant-Appellee*.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Fillmore East BS Finance Subsidiary LLC ("Fillmore") appeals from a judgment of the United States District Court for the Southern District of New York (Gardephe, *J.*), entered March 30, 2013. The district court dismissed the first six claims of Fillmore's complaint against Capmark Bank ("Capmark") for failure to state a claim under Rule 12(b)(6), and the last two by consent of the parties. We assume the parties' familiarity with the relevant facts, the procedural history, and the issues on appeal.

I.

Fillmore first argues that the district court erred in concluding that Fillmore's breach of contract claim was properly dismissed because Fillmore failed to allege sufficiently that Capmark Finance, Inc. ("CFI") was the alter ego of Capmark such that Fillmore could recover from Capmark for CFI's alleged breach of the May 2007 Co-Lending and Servicing Agreement ("Servicing Agreement"). We disagree.

"In a diversity case, we apply the choice of law rules of the forum state – in this case New York – to determine what law governs alter ego or piercing the corporate veil analysis." *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997). New York choice of law rules provide that generally "the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (alteration omitted). Because CFI is a California corporation, California law governs this claim.

The two main requirements for veil-piercing under California law are (1) that "there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist," and (2) that "there must be an inequitable result if the acts in question are treated as those of the corporation alone." *Shaoxing Cnty. Huayue Import & Export v. Bhaumik*, 120 Cal. Rptr. 3d 303, 309-10 (Cal. App. 2011) (internal quotation marks omitted). Factors that courts consider in this inquiry include "the commingling of funds and assets of the two entities, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and use of one as a mere shell or conduit for the affairs of the other." *Id.* at 310.

We agree with the district court's disposition of this claim. The complaint makes only generalized and conclusory allegations regarding common ownership, employees, management, control, and decisionmaking between Capmark and CFI. Such allegations are essentially a recitation of the legal standard and are plainly insufficient to state a claim of alter ego status. *See Wehlage v. EmpRes Healthcare, Inc.*, 791 F. Supp. 2d 774, 782-83 (N.D. Cal. 2011) (generalized allegations of common decisionmaking, operation, and shared "officers, directors and employees" are insufficient to invoke the alter ego doctrine); *see also Arctic Ocean Int'l, Ltd. v. High Seas Shipping Ltd.*, 622 F. Supp. 2d 46, 54 (S.D.N.Y. 2009) (allegations consisting of little more than "labels and conclusions that reflect formulaic recitations of the elements of a cause of action" are insufficient to state an alter ego claim (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (alteration and internal quotation marks omitted)).[1]

---

[1] Federal pleading standards apply in diversity cases. *See, e.g.*, *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986) ("Because in federal diversity cases . . . , procedural matters are governed by the Federal Rules of Civil Procedure, 'the mode of pleading . . . is governed by Rule 8, Fed. R.

Fillmore also points to several emails that it asserts show "overlapping management and employees," which it submitted with its opposition to the motion to dismiss. On a motion to dismiss under Rule 12(b)(6), however, "[w]e do not consider matters outside the pleadings." *Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 202 (2d Cir. 2013). And even were we to take this new evidence into account, it still does not suffice to make out a claim. The emails show, at best, that a single employee was employed by both Capmark and CFI. This factual allegation simply does not support the legal conclusion that the two corporations were so unified in interest that the corporate form should be disregarded and the companies treated as alter egos. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Accordingly, this claim was properly dismissed.

## II.

Fillmore's second claim alleges a breach of the implied covenant of good faith and fair dealing. "[T]he covenant of good faith and fair dealing is implicit in every contract" under New York law, but "it cannot be construed so broadly as effectively to nullify other express terms of a contract, or to create independent contractual rights." *Consol. Edison, Inc. v. Ne. Utils.*, 426 F.3d 524, 529 (2d Cir. 2005) (quoting *Fesseha v. TD Waterhouse Investor Servs.*, 761 N.Y.S.2d 22, 23 (App. Div. 1st Dep't 2003)) (internal quotation marks omitted). "In order to find a breach of the

---

Civ. P.'"). However, the same result would obtain under either California or New York standards for pleading an alter ego claim. *See Flushing Plaza Assocs. No. 2 v. Albert*, 958 N.Y.S.2d 713, 715 (App. Div. 2d Dep't 2013) ("The mere claim that the corporation was completely dominated by the defendants, or conclusory assertions that the corporation acted as their 'alter ego,' without more, will not suffice to support the equitable relief of piercing the corporate veil."); *accord Vasey v. Cal. Dance Co.*, 139 Cal. Rptr. 72, 76 (Cal. App. 1977).

4

implied covenant, a party's action must directly violate an obligation that may be presumed to have been intended by the parties." *Gaia House Mezz LLC v. State Street Bank & Trust Co.*, 720 F.3d 84, 93 (2d Cir. 2013) (internal quotation marks omitted); *see also Luxus Aviation, LLC v. Kerwin Media LLC*, 938 N.Y.S.2d 11, 14 (App. Div. 1st Dep't 2012) ("[T]he implied covenant can only be invoked to include terms that the parties must have intended because they are necessary to give business efficacy." (ellipsis and internal quotation marks omitted)). "For a complaint to state a cause of action alleging breach of an implied covenant of good faith and fair dealing, the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff." *Aventine Inv. Mgmt., Inc. v. Can. Imperial Bank of Commerce*, 697 N.Y.S.2d 128, 130 (App. Div. 2d Dep't 1999).

We disagree with the district court's holding that this claim is duplicative of Fillmore's breach of contract claim. This claim rests not on CFI's conduct, but on actions allegedly undertaken by Capmark itself. Moreover, Fillmore asserts here that Capmark "sought to prevent Fillmore from receiving the benefits contracted for in the Loan Agreement, the Servicing Agreement," and other contracts related to the loan, while the breach of contract claim was premised only on CFI's breach of the Servicing Agreement and Capmark's liability for that breach based on an alter ego theory of liability.

However, this claim was nonetheless properly dismissed. We cannot presume that the parties intended the terms that Fillmore would imply or that they would be "necessary to give business efficacy" to the contract. "[T]he implied covenant does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract." *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir.

5

1990) (quoting *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publ'g Co.*, 281 N.E.2d 142, 145 (N.Y. 1972)) (internal quotation marks omitted).  At most, this is all Fillmore has alleged with regard to the contracts in question, and accordingly we affirm the dismissal of the claim for a breach of the implied covenant.

III.

The district court also properly dismissed Fillmore's third claim, in which Fillmore alleged that Capmark aided and abetted a breach of fiduciary duty by CFI.  "A claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach."  *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 169 (App. Div. 1st Dep't 2003).  "[A] special [fiduciary] relationship of trust and confidence does not arise merely from an arm's-length business transaction."  *Waterscape Resort LLC v. McGovern*, 967 N.Y.S.2d 368, 369 (App. Div. 1st Dep't 2013).

In order to establish a breach of fiduciary duty by CFI on which the aiding and abetting claim against Capmark is predicated, Fillmore must allege that, "*apart from the terms of the contract*, the parties created a relationship of higher trust than would arise from [their contracts] alone, so as to permit a cause of action for breach of a fiduciary duty independent of the contractual duties."  *Brooks v. Key Trust Co. Nat'l Ass'n*, 809 N.Y.S.2d 270, 272-73 (App. Div. 3d Dep't 2006) (emphasis and alteration in original) (citations and internal quotation marks omitted).  Hence, where there was a "formal written agreement covering the precise subject matter of the alleged fiduciary duty," there is no actionable tort for a breach of fiduciary duty.  *Pane v. Citibank, N.A.*, 797 N.Y.S.2d 76, 77 (App. Div. 1st Dep't 2005).

6

In this case, the plaintiff has failed to allege any fiduciary duty owed by CFI that was independent of and separate from the Servicing Agreement. Under New York law, "[u]nless the contract creates a relation, out of which relation springs a duty, independent of the mere contract obligation, though there may be a breach of contract, there is no tort, since there is no duty to be violated." *Savage Records Grp., N.V. v. Jones*, 667 N.Y.S.2d 906, 906 (App. Div. 1st Dep't 1998) (internal quotation marks omitted) (affirming dismissal of claim for breach of fiduciary duty). Therefore, Fillmore has no actionable breach of fiduciary duty claim in tort against CFI.

Accordingly, Fillmore has no aiding and abetting claim against Capmark because there can be no claim for aiding and abetting a breach of fiduciary duty without an underlying primary claim for breach of fiduciary duty. *Aldoro, Inc. v. Gold Force Int'l Ltd.*, 859 N.Y.S.2d 154, 155 (App. Div. 1st Dep't 2008) ("As plaintiff does not have a claim for breach of fiduciary duty against the debtor defendant and its principals, it cannot have claims against the other defendants for aiding and abetting that breach."); *In re Bear Stearns Litig.*, 870 N.Y.S.2d 709, 739 (Sup. Ct. N.Y. Cnty. 2008) ("Absent a primary breach of fiduciary duty, aiding and abetting liability cannot attach . . . ."). Hence, the district court correctly dismissed Fillmore's claim against Capmark for aiding and abetting a breach of fiduciary duty by CFI.

## IV.

The district court dismissed Fillmore's claim for tortious interference with contract because both Capmark and CFI were signatories to the loan agreement ("Loan Agreement") governing the loan to Downtown Miami Mall LLC and Downtown Miami Hotel LLC (the "Borrowers"). Under New York law, "[a] claim of tortious interference requires proof of (1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the

7

defendant's intentional procuring of the breach, and (4) damages." *Foster v. Churchill*, 665 N.E.2d 153, 156 (N.Y. 1996).

The district court relied on New York case law holding that "only a stranger to a contract, such as a third party, can be liable for tortious interference with a contract." *E.g.*, *Ashby v. ALM Media, LLC*, 973 N.Y.S.2d 109, 110 (App. Div. 1st Dep't 2013) (internal quotation marks omitted). However, because this was a multilateral contract, this doctrine may be an insufficient ground to dismiss in this case. *See, e.g.*, *UBS Sec. LLC v. Highland Capital Mgmt., L.P.*, 927 N.Y.S.2d 59, 66 (App. Div. 1st Dep't 2011) ("[S]ome courts have held that a party to a multilateral agreement can be found liable for tortious interference with the agreement . . . where the alleged tortfeasor has rights and duties that are separate from those of the breaching party." (citations omitted)); *Rosenfeld v. Sayers*, 858 N.Y.S.2d 382, 383 (App. Div. 2d Dep't 2008); *see also Aljassim v. S.S. South Star*, 323 F. Supp. 918, 926 (S.D.N.Y. 1971) ("Public policy requires that the rights of two contracting parties be protected from tortious interference . . . ; the fact that one may derive rights under the same agreement as two other contracting parties does not excuse interference with their contractual rights."). Here, Capmark has "rights and duties that are separate from those of the breaching party," *UBS Sec. LLC*, 927 N.Y.S.2d at 66, namely, the Borrowers. Therefore, the fact that Capmark is a party to the contract is an insufficient reason to dismiss the claim.

Even if the district court erred on this ground, however, "we are free to affirm a decision on any grounds supported in the record, even if it is not one on which the trial court relied." *United States v. Simard*, 731 F.3d 156, 161 (2d Cir. 2013). And the tortious interference claim fails nonetheless, as it has not been plausibly alleged that Capmark intentionally procured the Borrowers' breach of the Loan Agreement. "To survive a motion to dismiss, a complaint must contain sufficient

8

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations and alterations omitted).

The complaint alleges only in conclusory fashion that Capmark intentionally induced a breach. The allegations here are not "based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). Rather, as in *Twombly*, the "factual allegations describe[] only actions that [are] . . . consistent with lawful conduct," and accordingly "the conclusory allegation on information and belief that the observed conduct was the product of . . .[culpable conduct is] insufficient to make the claim plausible." *Id.* (citing *Twombly*, 550 U.S. at 556-57).

The complaint states that an "'Event of Default' occurs, *inter alia*, 'if unpaid interest, accrued but unpaid interest and all other amounts outstanding under the Loan Documents are not paid in full on or before the Maturity Date,'" and that the Borrowers had "the contractual right pursuant to the Loan Agreement to extend the Maturity Date" of the loan upon payment of a fee (the "Extension Fee"). J.A. 12. The complaint alleges that the Borrowers defaulted on the loan after they "failed to extend the Maturity Date of the Loan by paying the Extension Fee." *Id.* at 17. There is no question that the Borrowers were entitled to pay the fee and thus extend the Maturity Date, but there is no allegation that the Borrowers were *required* under any circumstance to make use of that provision – even if they were able to pay the Extension Fee and deemed it in their best interests to

9

do so. While the complaint alleges that Capmark engaged in restructuring negotiations with the Borrowers before the default, it also acknowledges that no such restructuring of the loan took place before Capmark sold its interest in the loan.

Without more, the factual information contained in the complaint – i.e., that the Borrowers did not extend the repayment date and thus defaulted under the Loan Agreement – does not support the complaint's conclusory statements that Capmark convinced the Borrowers to default and not to pay the Extension Fee. Thus, Fillmore has not carried the allegation that Capmark intentionally procured the breach of the Loan Agreement into the realm of plausibility. *See Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))). Accordingly, Fillmore's tortious interference claim was properly dismissed.

V.

The final claims that we review here are Fillmore's allegations that both Capmark and CFI committed gross negligence in their conduct related to this transaction, and that Capmark committed willful misconduct by inducing the borrowers to default. Again, because Fillmore has failed to make sufficient allegations to support alter ego liability, Capmark cannot be held liable for the actions of CFI, which is not a party to this action.

"Claims for gross negligence [and] willful misconduct sound in contract rather than tort" where, absent a contractual agreement, the defendant "would have had no duty to plaintiffs." *OFSI Fund II, LLC v. Can. Imperial Bank of Commerce*, 920 N.Y.S.2d 8, 10 (App. Div. 1st Dep't 2011).

10

Fillmore has not plausibly "allege[d] a breach of a duty independent of the contract" by Capmark, so its tort claims cannot succeed. *Pacnet Network Ltd. v. KDDI Corp.*, 912 N.Y.S.2d 178, 180 (App. Div. 1st Dep't 2010); *accord Sommer v. Fed. Signal Corp.*, 593 N.E.2d 1365, 1369 (N.Y. 1992) ("A tort may arise from the breach of a legal duty independent of the contract, but merely alleging that the breach of contract duty arose from a lack of due care will not transform a simple breach of contract into a tort.").

Moreover, under New York law, "claims based on negligent or grossly negligent performance of a contract are not cognizable." *Pacnet Network*, 912 N.Y.S.2d at 180. The complaint here states that Capmark "egregiously breach[ed] its duty of care to Fillmore by failing to exercise even the slightest degree of care in performing under the Loan Agreement and Servicing Agreement and act[ed] carelessly and with reckless disregard as to Fillmore's rights under those agreements." J.A. 27-28. Therefore, Fillmore has failed to plead a tort claim for gross negligence because it has alleged only the negligent performance of a contract.

To the extent that the willful misconduct claim is distinguishable from the gross negligence claim, it is duplicative of Fillmore's claim for tortious interference with contract, which was properly dismissed. *See* J.A. 28-29 ("Capmark Bank intentionally induced Borrower to default on the loan . . . . Capmark Bank's intentional inducement of Borrower to default under the Loan and then declare the Loan to be in default constitutes willful misconduct."). We accordingly affirm the district court's dismissal of these claims.

## VI.

Fillmore requests that the case be remanded with instructions to permit it to amend its complaint. "We review the denial of a motion for leave to amend for an abuse of discretion." *Jones*

11

*v. N.Y. State Div. of Military and Naval Affairs*, 166 F.3d 45, 49 (2d Cir. 1999).  The district court correctly denied Fillmore's January 2012 motion to bring its claims against CFI, as joining CFI as a party would have destroyed complete diversity and thereby eliminated the court's subject-matter jurisdiction.  Fillmore does not appear to have requested leave to amend its other claims in the district court, and "we will not deem it an abuse of the district court's discretion to order a case closed when leave to amend has not been sought." *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 89 (2d Cir. 1999) (internal quotation marks omitted).

We have considered all of Plaintiff-Appellant's remaining arguments and find them to be without merit.  For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk