Filed 12/3/24  Union Patriot Capital Management II v. Del Castro CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| UNION PATRIOT CAPITAL MANAGEMENT II, LLC et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> RICHARD RIONDA DEL CASTRO et al., <br><br> Defendants and Appellants. | B322811, B324476 <br><br> (Los Angeles County Super. Ct. Nos. BC687697) |
| UNION PATRIOT CAPITAL MANAGEMENT II, LLC et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> RICHARD RIONDA DEL CASTRO et al., | B322831, B324421 <br><br> (Los Angeles County Super. Ct. Nos. BC681300) |

Defendants and
Appellants.

APPEALS from judgments and orders of the Superior Court of Los Angeles County, Barbara M. Scheper, Judge. Affirmed.

Law Offices of Douglas G. Webber and Douglas G. Webber, Hamrick & Evans and A. Raymond Hamrick, III for Defendants and Appellants.

Daniels, Fine, Israel, Schonbuch & Lebovits and Maureen M. Michail; Jung & Yuen and Curtis C. Jung, for Plaintiffs and Respondents.

_____

## I.  INTRODUCTION

In this consolidated appeal, defendants Richard Rionda Del Castro (Richard), Patricia Eberle Rionda Del Castro (Patricia), and Hannibal Media, Inc. dba Hannibal Pictures (Hannibal Media) appeal from judgments following a bench trial and subsequent orders.  At trial, plaintiffs[1] prevailed against

_____

[1]  Plaintiffs were Union Patriot Capital Management, LLC (Union Patriot), Union Patriot Capital Management II, LLC (Union Patriot II), Justice Everywhere Productions LLC (Justice), and I Am Wrath Production, Inc. (I Am Wrath).  I Am Wrath's claims were ordered to arbitration and subsequently abandoned. It is not a party to this appeal.

2

Hannibal Classics, Inc. (Hannibal Classics), Marco Polo Production SAS (Marco Polo), and USS Indianapolis Production, Inc. (USSIP), on breach of contract and tort claims.[2] Plaintiffs then successfully sought to amend the judgment to add the appealing defendants as judgment debtors under an alter ego theory of liability. Plaintiffs also filed an affidavit of identity that listed a spendthrift trust and Richard as the trustee of that trust as alternate names for Richard.

On appeal, Richard and Patricia argue that the trial court denied them their right to a jury trial, violated their due process rights during trial, and erred by finding them liable under an alter ego theory for Hannibal Classics's acts. They also challenge the calculation of damages and an attorney fees award. Richard additionally argues that the court erred by not vacating the affidavit of identity. Finally, Hannibal Media argues the court erred by amending the judgments to add it as a judgment debtor. We affirm the judgment and challenged orders.

## II.    BACKGROUND

A.    *Summary of Dispute*[3]

Various plaintiffs entered into agreements with various corporate entities that were owned and controlled by Richard and

---

[2]    Hannibal Classics, Marco Polo, and USSIP are not parties to this appeal.

[3]    Because appellants do not challenge the sufficiency of the evidence supporting the verdicts, we provide here only an overview of the underlying facts, as necessary for context.

Patricia, in connection with the production and distribution of two films. On June 19, 2015, Union Patriot II entered into a financing agreement with USSIP, pursuant to which Union Patriot II agreed to and did loan $14,556,044.72 to USSIP for the production of the film USS Indianapolis: Men of Courage (USS Indianapolis film). On that same date, Union Patriot II entered into a sales agency interparty agreement with Hannibal Classics, pursuant to which Hannibal Classics agreed to act as a sales agent for Union Patriot II and to distribute the USS Indianapolis film in territories outside of North America. Instead of repaying the loan or paying Union Patriot II money due under the sales agreement, Richard and Patricia used the funds for their own financial gain.

On February 3, 2016, Justice and Union Patriot II entered into a sales agency agreement with Hannibal Classics for the film Vengeance: A Love Story (Vengeance film). Justice and Union Patriot II agreed to produce and finance the Vengeance film in exchange for Hannibal Classics's agreement to distribute the film in territories outside of North America. Hannibal Classics, through Richard and Patricia, promised to secure minimum guaranteed payments from foreign distributors and to wire those payments to a third-party account. Instead, Hannibal Classics, at Richard's direction, sold the Vengeance film to foreign distributors and directed the distributors to pay the money directly into Hannibal Classics's account.

B.    *Procedural History before Trial*

1.    <u>Case No. BC687697—USS Indianapolis Film</u>

On May 18, 2018, plaintiffs[4] filed the operative first amended complaint against Richard, Patricia, Hannibal Classics, and USSIP alleging causes of action for fraud, breach of contract, conversion, interference with contract, breach of guaranty, imposition of a constructive trust, and accounting.

2.    <u>Case No. BC681300—Vengeance Film</u>

On April 25, 2018, plaintiffs[5] filed the operative second amended complaint against Richard, Patricia, Marco Polo, and Hannibal Classics.  That complaint alleged causes of action for breach of contract, interference with contract, conversion, fraud, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, imposition of a constructive trust, and accounting.

3.    <u>Defense Counsel Relieved</u>

All defendants, including the appealing defendants, were initially represented by counsel in these matters.  But, by August 2020, counsel for all the defendants were either relieved or substituted out such that the corporate defendants were

---

[4]    Plaintiffs were Union Patriot and Union Patriot II.

[5]    Plaintiffs were Union Patriot II and Justice.

unrepresented and Richard and Patricia appeared in propria persona.

### 4. Trial Setting Conference and Consolidation for Trial

The trial court conducted a trial setting conference on October 8, 2020, and set the matters for final status conference on July 9, 2021, with trial scheduled to begin on July 19, 2021. The record does not include a reporter's transcript of the October 8, 2020, proceeding, but a minute order reflects that Richard and Patricia appeared at that conference. The court advised the parties that they were required to comply with Superior Court of Los Angeles County, Local Rules, rule 3.25 (Local Rule 3.25), which requires that parties file certain documents, such as jury instructions, witness lists, and exhibit lists, five days prior to the final status conference. The court also advised the parties that corporate defendants could only appear at trial through counsel.[6]

On November 16, 2020, the trial court consolidated the USS Indianapolis film case and Vengeance film case for purposes of trial.

On June 18, 2021, the trial court continued the final status conference to July 19, 2021.

On July 9, 2021, plaintiffs filed a pretrial status report, notifying the trial court that they were ready to proceed with trial, and wished to waive their right to a jury trial.

On July 13, 2021, Richard and Patricia filed their pretrial status report, stating that they did not and had not waived their right to jury trial. They also requested a trial continuance.

---

[6] Richard and Patricia are not attorneys.

On July 14, 2021, plaintiffs submitted their trial exhibit and witness lists.

### 5. July 19, 2021, Final Status Conference

On July 19, 2021, plaintiffs, Richard, and Patricia appeared before the trial court for a final status conference. The court reminded Richard and Patricia that they could not represent the corporate defendants at trial. The court also observed that defendants had failed to submit any trial documents, such as jury instructions, verdict forms, and statements of the case. (See Local Rule 3.25(f) [failure to comply can result in waiver of jury trial].) The court advised Richard and Patricia that, because they had failed to timely submit a witness list, they could not call any witnesses other than themselves at trial. It then ordered Richard and Patricia to submit their exhibit list by July 20, 2021, and continued the trial to August 16, 2021.

### 6. Relief from Jury Trial Waiver

On July 20, 2021, Richard filed trial exhibit and witness lists.

On July 26, 2021, Richard and Patricia moved for relief from jury trial waiver.

On August 10, 2021, the trial court reversed its earlier finding of jury trial waiver. It then set the following schedule for resolving the pending claims: the parties would first proceed to a bench trial on the claims against the corporate defendants; then they would continue with a bench trial on the issue of alter ego liability; and finally, they would proceed to a jury trial on the

claims against Richard and Patricia, if necessary. The court further ruled that Richard and Patricia would be permitted to participate in the bench trial as to issues of alter ego liability. The court denied any further continuances.

### 7. Hannibal Classics's Bankruptcy and Automatic Stay

On August 16, 2021, Richard orally advised the trial court that Hannibal Classics had declared Chapter 7 bankruptcy the prior day. The court observed that it had not received any documents regarding the bankruptcy proceeding and would therefore continue with the bench trial. Later that afternoon, Patricia filed a notice of automatic stay pursuant to the bankruptcy proceeding.

On August 17, 2021, plaintiffs' counsel argued that, notwithstanding the existence of the bankruptcy stay, the trial court could proceed on causes of action that named Hannibal Classics as a defendant, so long as the court did not enter a judgment against it. The court agreed with plaintiffs' position and continued with the bench trial.

On August 18, 2021, the parties completed the trial against the corporate defendants and began the trial on alter ego liability.

On August 19, 2021, plaintiffs' counsel notified the trial court that Richard, without leave of the bankruptcy trustee, had filed a motion for sanctions in bankruptcy court, which was set for September 14, 2021. Plaintiffs requested and the court granted a continuance of the trial proceedings.

After the bankruptcy court denied Richard's motion for sanctions, the trial court resumed the trial on October 4, 2021, and concluded trial that day.

### 8.    Alter Ego

The alter ego liability portion of the trial commenced on August 18, 2021.  The trial court permitted Richard and Patricia to call only themselves as witnesses.  But it allowed them to cross-examine the plaintiffs' sole witness.[7]

On October 4, 2021, plaintiffs' counsel advised the trial court that Richard had not produced to plaintiffs, or filed with the court, any of the exhibits listed on Richard's exhibit list. Richard apologized and promised that "by tomorrow noon, they will all be filed."  When the court asked Richard whether the exhibits had ever been produced to plaintiffs during the course of discovery, Richard stated that he believed that they had but neither he nor Patricia could support that assertion.  The court then provided Richard and Patricia an opportunity to submit briefing on "what documents you think are supportive of your position and why they have not been produced . . . ."

On November 30, 2021, the trial court ruled that it had considered defendants' late-filed exhibits, and concluded that they lacked authentication.  It also ruled that even if the exhibits were introduced at trial, they would not change the court's ruling.

---

[7]    For the alter ego portion of the trial, plaintiffs called only one witness to testify, Paul Cohen, a private investigator hired by plaintiffs.  Plaintiffs also introduced Richard and Patricia's prior deposition testimony.

C.     *Court Reopens Trial Against Corporate Defendants*

On December 22, 2021, the trial court conducted a hearing on an order to show cause regarding receipt of judgment and entry of judgment.  It observed that "things have kind of gotten out of order."  It also expressed "some misgivings about finalizing this matter without allowing the defendant[s] to address the—at least the damages."  The court therefore ruled that it would reopen the evidence in the trial against the corporate defendants so that Richard and Patricia could cross-examine plaintiffs' witnesses.  The court reserved ruling on whether Richard and Patricia would also be able to present their own further testimony in the trial against the corporate defendants.  The court then set January 7, 2022, as a status conference for further trial proceedings.  The court ordered Richard and Patricia to submit to plaintiffs' counsel, by December 29, 2021, a list of witnesses whom they wished to cross-examine.  On December 28, 2021, Richard and Patricia filed a witness list identifying 20 witnesses, including witnesses who had not testified at trial.  The witness list did not include an offer of proof of the witnesses' proposed testimony and instead listed only the names of the witnesses.

Plaintiffs' counsel and Richard appeared at the January 7, 2022, status conference.  In explaining Patricia's absence, Richard stated that she had contracted COVID-19.  The trial court observed that Richard and Patricia had been ordered to submit in writing the witnesses whom they wished to cross-examine but had instead filed a witness list without leave of court.  Richard explained his list of witnesses in this manner: "we also added some witnesses that are paramount to our case,

especially to the calculation of the damages that plaintiff is claiming." Richard did not provide an offer of proof for any witness's testimony. The court continued the hearing to January 14, 2022.

At the January 14, 2022, hearing, the trial court granted Richard and Patricia leave to cross-examine only the witnesses who had testified at the corporate defendants' trial. The court continued the reopened trial to January 25, 2022, for cross-examination.

On January 25, 2022, plaintiffs' counsel and Patricia appeared for the scheduled trial proceedings. Richard did not appear. Patricia represented to the trial court that Richard had contracted COVID-19. When the court asked if Patricia was prepared to proceed, she responded, "No[.]" The court then found that Richard and Patricia had waived the opportunity to cross-examine the witnesses, and denied Patricia's request for a continuance. The court found Richard's claim of illness to be not credible and noted the absence of documentary evidence to support his claim.[8]

---

[8]     Plaintiffs' counsel, as part of the notice of the court's January 25, 2022, ruling, included as an exhibit Richard's e-mail to counsel. Richard e-mailed plaintiffs' counsel the night before the January 25, 2022, hearing, stating that, "Patricia and I have tested positive with [COVID-19] during the [weekend] . . . . I want to inform you that we will be asking the [c]ourt for a continuance for tomorrow['s] trial and the next days due to us starting to feel the symptoms of [COVID-19]." At the January 25, 2022, hearing, Patricia stated that had been unable to appear two weeks earlier because she "had" COVID-19.

11

D.    *Statements of Decision and Judgments*

1.    USS Indianapolis Film Case

On March 9, 2022, the trial court issued its statement of decision in the USS Indianapolis film case, finding that plaintiffs had prevailed against USSIP and Hannibal Classics on their claims for fraud, breach of contract, and conversion. The court further found that Richard and Patricia were alter egos of the corporate entities. For damages, the court found that defendants were liable for $19,807,792.35, consisting of: for the fraud and breach of contract claims, $5,607,536 of the unpaid loan, and, based on the financing agreement provisions for interest, finance charges, and preferred return rates, an additional $13,556,559.35; and, for the conversion claim, $643,697. The court further found that plaintiffs were entitled to attorney fees and costs.

On March 15, 2022, plaintiffs filed requests to dismiss their claims against Richard and Patricia "that were asserted against them directly (not as alter egos) . . . ." The requests for dismissal specified the following causes of action as the subject of the dismissals: the second and sixth cause of action in the Vengeance film case and the fifth cause of action in the USS Indianapolis film case.[9]

---

[9]    The operative complaint in the Vengeance film case named Richard as a defendant in the first, third, fourth, sixth, and seventh causes of action and Patricia as a defendant in the second, third, fourth, and sixth causes of action. The operative complaint in the USS Indianapolis film case named Richard and

12

On April 13, 2022, the trial court entered judgment.

### 2. Vengeance Film Case

On March 9, 2022, the trial court issued a statement of decision, finding in favor of plaintiffs on their claims against Marco Polo and Hannibal Classics in the Vengeance film case. Specifically, it found that plaintiffs had proven their claims for breach of contract, conversion, fraud, and breach of fiduciary duty. The court further found that plaintiffs were entitled to damages in the amount of $2,749,387.60, consisting of: the unpaid $1,433,712 minimum guaranteed payments from foreign distributors; prejudgment interest in the amount of $430,113.60; and finance charges for defendants' unlawful retention of the funds, $885,562.

The trial court next considered the question of alter ego liability and found that Richard and Patricia were the alter egos of Hannibal Classics and Marco Polo.

The trial court also found that plaintiffs were entitled to attorney fees and costs.

On April 13, 2022, the trial court entered judgment.

---

Patricia as defendants in the first, second, third, fourth, and fifth causes of action.

E.   *Posttrial Motions*

    1.   Motions for New Trial

On May 9 and 13, 2022, Richard and Patricia filed a motion for new trial in both cases.  On June 16, 2022, the trial court denied the motions.[10]

    2.   Motions to Set Aside Judgment/Requests for Dismissal

On May 27, 2022, Richard and Patricia filed motions to set aside the judgment in both cases, arguing that the April 13, 2022, judgments were void because some of plaintiffs' causes of action were still pending.

On July 19, 2022, the trial court denied the motions but agreed with Richard and Patricia that plaintiffs had failed to dismiss some of the claims against them.  The court therefore set an order to show cause regarding dismissal of all of plaintiffs' claims against Richard and Patricia individually.

On July 28, 2022, plaintiffs filed their requests for dismissal of the remaining claims against Richard and Patricia.

    3.   Motions for Attorney Fees

On June 17, 2022, plaintiffs filed motions for attorney fees, pursuant to attorney fees provisions in the sales agency agreement in the Vengeance film case, and the financing

---

[10]   Richard and Patricia were represented by counsel at this hearing and during all subsequent proceedings.

14

agreement, sales agency agreement, and security agreement in the USS Indianapolis film case.

On August 3, 2022, the trial court heard argument on plaintiffs' motions.

On August 11, 2022, the trial court ruled on the motions, finding plaintiffs the prevailing parties in both cases. For the Vengeance film case, the court awarded plaintiffs $486,748 in attorney fees. For the USS Indianapolis film case, the court awarded plaintiffs $156,590.

### 4. Affidavit of Identity and Order

On June 27, 2022, plaintiffs submitted an affidavit of identity and order in the USS Indianapolis film case. Plaintiffs' counsel declared that Richard was also known as "Richard Rionda del Castro, Trustee for RDCR Irrevocable Spendthrift Trust, an Irrevocable Trust Dated January 11, 2018" and "RDCR Irrevocable Spendthrift Trust, an Irrevocable Trust Dated January 11, 2018 and Settled by Richard Rionda del Castro, as His Sole and Separate Property" (RDCR Trust). On July 1, 2022, the trial court ordered "that the identification of the judgment debtor [Richard] shall include" the additional names and that "those names may be added to any writ of execution . . . ."

On July 15, 2022, defendants filed a motion to vacate the affidavit of identity. On August 18, 2022, the trial court denied the motion.[11]

On August 24, 2022, plaintiffs submitted an application for issuance of a writ of execution, possession, or sale in the USS

---

[11] Patricia moved to vacate an affidavit of identity pertaining to her, which the court granted in part.

15

Indianapolis film case. The application listed as additional names for Richard the RDCR Trust and Richard as trustee of the RDCR Trust.[12]

### 5. Motions to Amend Judgments to Add Hannibal Media as Judgment Debtor

On July 5, 2022, plaintiffs moved to amend both judgments to add Hannibal Media as a judgment debtor pursuant to Code of Civil Procedure section 187.[13] Citing to evidence introduced at trial, plaintiffs argued that Hannibal Media was an alter ego of Richard, Patricia, USSIP, and Marco Polo, which operated as a "single joint enterprise."

On July 29, 2022, the trial court heard argument regarding plaintiffs' motions to amend the judgments.

## F. *Notices of Appeal and Entry of Amended Judgments*

On August 17, 2022, Richard, Patricia, and Hannibal Media filed appeals from judgments and orders entered on April 13, 2022, July 19, 2022, and August 11, 2022, in both cases.

On September 1, 2022, the amended judgments were entered in both cases.

---

[12] Subsequent enforcement proceedings are the subject of a separate appeal. (*Union Patriot Capital Management II, LLC et al. v. Del Castro, et al.* (B329110).)

[13] Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

16

Also on September 1, 2022, the trial court issued minute orders in which it ordered the April 13 and August 13, 2022, judgments vacated.

On October 27, 2022, Richard, Patricia, and Hannibal Media filed a notice of appeal from the September 1, 2022, judgment in the Vengeance film case.

## III.  DISCUSSION

A.  *Appealability Issues*

Plaintiffs contend that the appeals by Richard and Patricia should be dismissed on the grounds that they appeal from the April 13, 2022, judgments, which were vacated on September 1, 2022.  Thus, in plaintiffs' view, Richard and Patricia have appealed from a nonexistent judgment.

In the Vengeance film case, Richard, Patricia, and Hannibal Media filed a notice of appeal from the September 1, 2022, judgment.  They therefore timely appealed from the judgment in that case.  Regarding their appeal of the USS Indianapolis film case, we treat defendants' premature notices of appeal filed on August 17, 2022, as a valid "notice of appeal filed after judgment is rendered but before it is entered."  (Cal. Rules of Court, rule 8.104(d)(1).)  Accordingly, all the appeals are timely.  (*Ko v. Maxim Healthcare Services, Inc.* (2020) 58 Cal.App.5th 1144, 1149.)[14]

---

[14]  Alternatively, we exercise our discretion to treat the notices of appeal as immediately filed after entry of judgment.  (Cal. Rules of Court, rule 8.104(d)(2); see *Wolf Metals Inc. v. Rand*

17

B.    *Right to Jury Trial*

Defendants contend they were denied their right to a jury trial because plaintiffs' "legal claims (i.e., for breach of contract, conversion, fraud, etc.) were inextricably intertwined with [p]laintiffs' equitable alter ego claims," such that defendants were entitled to a jury trial on the issue of their alter ego liability. We review arguments concerning the right to jury trial de novo. (See *LaFace v. Ralphs Grocery Co.* (2022) 75 Cal.App.5th 388, 395.)

As we discuss above, the trial court agreed with Richard and Patricia that they were entitled to a jury trial on plaintiffs' claims against them individually, but plaintiffs ultimately dismissed those claims. The judgments against defendants are premised entirely on the court's finding of alter ego liability. Because a finding of alter ego liability "is founded on equitable principles," parties are not entitled to a jury trial on this issue. (See *Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1108 (*Toho-Towa*); *Nmsbpcsldhb v. County of Fresno* (2007) 152 Cal.App.4th 954, 958 ["'As a general proposition, "[T]he jury trial is a matter of right in a civil action at law, but not in equity"'"].) Thus, Richard, Patricia, and Hannibal Media were not deprived of their right to a jury trial.

---

*Pacific Sales Inc.* (2016) 4 Cal.App.5th 698, 702, fn. 1 [applying rule to order granting motions to amend judgment under § 187].)

Further rule references are to the California Rules of Court unless otherwise indicated.

18

C.  *Due Process Rights*

Richard and Patricia also argue that the judgments must be vacated because the trial court violated their due process rights during the trial proceedings by:  (1) denying them the right to cross-examine witnesses; (2) preventing their witnesses from testifying; (3) excluding admission of their exhibits; and (4) preventing them from participating in the corporate defendants' trial.

1.  Applicable Law and Standard of Review

As noted, plaintiffs dismissed their direct liability claims against Richard and Patricia but successfully added them to the judgments as alter egos of the corporate entity defendants.  "'The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests.  [Citation.] In certain circumstances the court will disregard the corporate entity and will hold the individual shareholders liable for the actions of the corporation:  "As the separate personality of the corporation is a statutory privilege, it must be used for legitimate business purposes and must not be perverted.  When it is abused it will be disregarded and the corporation looked at as a collection or association of individuals, so that the corporation will be liable for acts of the stockholders or the stockholders liable for acts done in the name of the corporation."'" (*Shaoxing County Huayue Import & Export v. Bhaumik* (2011) 191 Cal.App.4th 1189, 1197–1198 (*Shaoxing*).)

19

"The authority of a court to amend a judgment to add a nonparty alter ego as a judgment debtor has long been recognized.  [Citation.]  'The ability under section 187 to amend a judgment to add a defendant, thereby imposing liability on the new defendant without trial, requires *both* (1) that the new party be the alter ego of the old party *and* (2) that the new party had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns.'  [Citation.]" (*Toho-Towa, supra*, 217 Cal.App.4th at p. 1106.)

"Generally, due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  (*Brown v. City of Los Angeles* (2002) 102 Cal.App.4th 155, 174.)  "'We review procedural due process claims de novo because "the ultimate determination of procedural fairness amounts to a question of law."  [Citation.]'  [Citation.]"  *(Severson & Werson, P.C. v. Sepehry-Fard* (2019) 37 Cal.App.5th 938, 944.)

### 2.     Right to Cross-Examine Witnesses

Defendants assert that during the corporate defendants' trial, "the individual [d]efendants were *completely precluded from 'speaking' or cross-examining [p]laintiffs' witnesses*."  (Boldface omitted.)  Defendants seem to acknowledge that the trial court reopened the trial proceedings to permit Richard and Patricia the opportunity to cross-examine plaintiffs' witnesses, but dismiss that order with the cursory assertion that "the damage had already been done."  We reject the argument.  "A witness examined by one party may be cross-examined upon any matter within the scope of the direct examination by each other party to

the action *in such order as the court directs*." (Evid. Code, § 773, subd. (a), italics added.)

### 3. Exclusion of Witnesses

Defendants next argue that the trial court denied them their due process rights when it ruled that Richard and Patricia were not permitted to call any witnesses, other than themselves, as a penalty for violating Local Rule 3.25(f)(1). According to defendants, the trial court should have imposed lesser sanctions against Richard and Patricia for their conceded failure to comply with Local Rule 3.25(f)(1).

Due process requires proper notice and the opportunity to respond. (See *In re Marriage of Siegel* (2015) 239 Cal.App.4th 944, 953–954.) Here, the record reflects that the trial court advised the parties on October 8, 2020, that they were required to comply with Local Rule 3.25(f)(1), which requires the filing of, among other items, a witness list five days before the final status conference, and provides that failure to comply could result in "not being able to call witnesses." Richard and Patricia do not dispute that they were given notice of the penalty that could be assessed against them. Instead, they suggest that because they appeared in propria persona, Local Rule 3.25(f)(1), which requires that "counsel" file witness and exhibit lists, did not apply to them. We reject their suggestion. "[T]he term 'counsel' includes self-represented litigants." (Super. Ct. L.A. County, Local Rules, rule 3.1.) They also contend that the penalty was disproportionate to the violation and cite *Guardianship of A.H.* (2022) 83 Cal.App.5th 155 and *In re Harley C.* (2019) 37 Cal.App.5th 494 in support. Those cases are distinguishable.

21

In *Guardianship of A.H., supra*, 83 Cal.App.5th 155, the moving party, who was represented by counsel, filed a petition to be appointed as guardian for two children. (*Id.* at p. 158.) The opposing party filed her own petition. (*Ibid.*) At the trial setting conference, the court ordered the parties to exchange a witness list by a certain date, and advised that the failure to do so would result in being precluded from calling any witnesses. (*Ibid.*) The moving party's counsel was present at the conference, but the party was not, and the witness list was not timely exchanged. (*Ibid.*) The trial court found no mistake, inadvertence, surprise, or excusable neglect, and dismissed the petition. (*Id.* at p. 159.) The Court of Appeal reversed, concluding the trial court had abused its discretion based on the following: the party's counsel, not the party, was at fault (*id.* at p. 161); the counsel's misconduct was not severe or extreme (*id.* at pp. 161–162); prejudice to the opposing party was negligible, as it was easily remedied by a continuance (*id.* at p. 162); lesser sanctions, such as monetary sanctions, could be imposed (*ibid.*); and, the trial court's order did not allow for lesser sanctions or the exercise of discretion, and a "'failure to exercise discretion is itself an abuse of discretion'" (*ibid.*).

In *In re Harley C., supra*, 37 Cal.App.5th 494, the juvenile court denied a mother the opportunity to present any evidence in a dependency hearing because her counsel had not filed a pretrial statement in violation of a local rule. (*Id.* at pp. 504–505.) The Court of Appeal reversed. (*Id.* at p. 498.) Among other things, the Court of Appeal determined that the local rule violated Welfare and Institutions Code section 358, which provides that the dependency court shall receive "relevant and material evidence" for disposition. (*Id.* at p. 507.) The Court of Appeal

22

also determined that the local rule at issue did not notify the mother of the consequences of noncompliance, and therefore violated section 575.2, which provides that "'[n]o penalty may be imposed under this section without prior notice to, and an opportunity to be heard by, the party against whom the penalty is sought to be imposed.'" (*Id*. at p. 509.)

Here, the trial court's imposition of a sanction that prevented witnesses other than Richard and Patricia from testifying was not the equivalent of dismissal because Richard and Patricia were still permitted to, and did, testify. Further, Richard and Patricia do not contend that Local Rule 3.25 violates state law. Finally, the court directly provided Richard and Patricia with notice about the potential penalty for their failure to file a witness list. On this record, we conclude that the court's order did not violate due process concerns.

We also reject Richard and Patricia's alternative argument that they were unfairly denied the right to call rebuttal witnesses. They contend that rebuttal witnesses need not be disclosed on a witness list. The trial court excluded the proffered rebuttal witnesses on the grounds that Richard and Patricia had not submitted a witness list, but Richard and Patricia did not object to that ruling. Accordingly, any such error is forfeited by their failure to object. (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264.)

Finally, even assuming the trial court erred in excluding Richard and Patricia's witnesses, defendants cannot show that they were prejudiced by the court's assumed error (Cal. Const., art. VI, § 13; Evid. Code, § 354) because defendants did not make an offer of proof about any of their witnesses' anticipated testimony in the trial court. (*Gutierrez v. Cassiar Mining Corp.*

(1998) 64 Cal.App.4th 148, 161 ["One function of an offer at trial is to provide a reviewing court with the means of assessing prejudice from any error"].)

### 4. Exhibits

Richard and Patricia next argue that even though they complied with the trial court's July 19, 2021, ruling, which required them to file exhibit lists by the following date, the court, on August 19, 2021, "still precluded [them] from offering any exhibits whatsoever during the trial . . . ." The reporter's transcript of the proceedings on August 19, 2021, reflect that on that date, Richard requested to submit "some *additional* exhibits, *supplement* exhibits" (italics added), explaining that these additional exhibits were "[j]ust on the alter ego situation . . . ." The court ruled that "at this time" it would "disallow exhibits and/or witnesses who were not timely disclosed," but noted that Richard could "submit whatever [he] want[ed], and [the court would] consider it." Thus, and contrary to defendants' contention, the court did not, on August 19, 2021, prevent Richard and Patricia from introducing "any" exhibits. The record reflects that the court did later prevent Richard and Patricia from introducing exhibits on November 30, 2021, but did so on the grounds that the exhibits lacked authentication and alternatively ruled that the exhibits would not change the court's ruling. Defendants do not challenge these rulings on appeal.

24

5.    Participation in Trial

Defendants also contend that the trial court denied Richard and Patricia "the fundamental due process right of participating in any manner whatsoever during the 'merits' portion of the trial . . . ." (Emphasis and capitalization omitted.) They cite in support the transcript from the December 22, 2021, hearing, during which they contend the court "explicitly ordered that the [d]efendants were not permitted to 'be heard at all on the liability/damages phase.'" (Emphasis omitted.) Defendants have selectively cited to the record, and have failed to cite the remainder of the court's statement, that it had reconsidered its ruling and believed "there [was] an issue of fairness here . . . ." Indeed, as discussed above, notwithstanding the court's earlier ruling preventing Richard and Patricia from participating in the corporate defendants' trial, the court later reopened the trial proceedings in order to permit Richard and Patricia the opportunity to cross-examine plaintiffs' witnesses. Further, as we discuss above, defendants cannot demonstrate that they were prejudiced by the court's order precluding them from calling additional witnesses because defendants failed to provide an offer of proof. Finally, defendants cannot demonstrate they were prejudiced by the court's order preventing them from introducing exhibits because the court considered defendants' late-filed exhibits and determined that they would not have changed the court's rulings at trial—a determination defendants do not contest on appeal. On this record, we find no due process violation.

25

D.    *Denial of Trial Continuance*

Defendants also contend that the trial court abused its discretion when, on January 25, 2022, it declined to continue the matter based on Richard's purported illness. "'"'Generally, power to determine when a continuance should be granted is within the discretion of the court, and there is no right to a continuance as a matter of law. [Citation.]'"'" [Citation.]" (*Mahoney v. Southland Mental Health Associates Medical Group* (1990) 223 Cal.App.3d 167, 170; accord, *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 823.) "To ensure the prompt disposition of civil cases, the dates assigned for a trial are firm." (Rule 3.1332(a).)

Here, Richard did not file a request for a continuance. (See rule 3.1332(b) ["A party seeking a continuance of the date set for trial, whether contested or uncontested or stipulated to by the parties, must make the request for a continuance by a noticed motion or an ex parte application under the rules in chapter 4 of this division, with supporting declarations. The party must make the motion or application as soon as reasonably practical once the necessity for the continuance is discovered"].) Moreover, even if Richard's e-mail to plaintiffs' counsel could be construed as a request for a continuance, the trial court did not abuse its discretion when it denied it. The court found Richard's conduct appeared to be an insincere attempt to delay trial. (See rule 3.1332(d) [other factors to consider in ruling on continuance motion include "proximity of the trial date," "any previous continuance, extension of time, or delay of trial due to any party," "prejudice that parties or witnesses will suffer as a result of the continuance," and [w]hether the interests of justice are best served by a continuance"].)

26

E.    *Alter Ego Findings*

1.    Bankruptcy Stay

Richard and Patricia contend that the bankruptcy stay prevented the trial court from finding them liable under an alter ego theory for claims against Hannibal Classics.  The scope and effect of a bankruptcy stay are questions of law we review de novo.  (*Shaoxing, supra,* 191 Cal.App.4th at p. 1196.)  We find no error.

"Upon the filing of a bankruptcy proceeding, federal bankruptcy law imposes an automatic stay on all state and federal proceedings outside the bankruptcy court against the debtor and the debtor's property.  (11 U.S.C. § 362(a)(1) & (2); *In re Schwartz* (9th Cir. 1992) 954 F.2d 569, 570–572.)"  (*Shaoxing, supra,* 191 Cal.App.4th at p. 1196.)  But where, as here, plaintiffs allege that defendants are "liable as [the bankruptcy debtor corporation's] alter ego with respect to money that [the corporation] owed for breach of contract [and other claims,] . . . [and do] not argue[ ] that the alter ego allegations constituted a substantive right of action belonging to the corporation[,] . . . the action [is] not subject to the automatic stay of the bankruptcy proceeding[]."  (*Id.* at p. 1199.)  Accordingly, the automatic stay did not preclude the trial court from adding Patricia and Richard as judgment debtors based on their identity as alter egos of Hannibal Classics.

## 2. Hannibal Media as Judgment Debtor

Hannibal Media contends that the trial court erred by adding it as a judgment debtor in both the USS Indianapolis film and Vengeance film cases. Hannibal Media argues that, because it never had control of the underlying litigation, the court erred by finding it was the alter ego of Richard and Patricia.

"'"Usually, a disregard of the corporate entity is sought in order to fasten liability upon individual stockholders . . . ."'" (*Toho-Towa, supra*, 217 Cal.App.4th at p. 1107.) "A court may also disregard the corporate form in order to hold one corporation liable for the debts of another affiliated corporation when the latter "'is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of another corporation.'" [Citations.] Thus, where there is 'such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal' [citation], the affiliated corporations may be deemed to be a single business enterprise, and the corporate veil pierced." (*Ibid.*) "'Whether the evidence has established that the corporate veil should be ignored is primarily a question of fact which should not be disturbed when supported by substantial evidence.'" (*Id.* at p. 1108.)

Substantial evidence supports the finding that Hannibal Media and Hannibal Classics operated as a single enterprise. Richard and Patricia solely owned and controlled both Hannibal Classics and Hannibal Media. Richard testified that the entry of a judgment in favor of Hannibal Media resulted in his and Patricia's receipt of "several million dollars personally." Richard

28

also testified that "we" paid more than $1.5 million for the rights to the USS Indianapolis film, which he explained was comprised of funds from "a combination of several companies controlled by my ex-wife and myself . . . ." Hannibal Classics was underfunded, since its only asset was its right to act as a sales agent to certain films. (*Butler America, LLC v. Aviation Assurance Co., LLC* (2020) 55 Cal.App.5th 136, 146 ["An important factor in determining alter ego liability is that a corporate entity is so undercapitalized that it is likely to have no sufficient assets to meet its debts"].) And, it had no employees. Hannibal Media paid for Patricia's car and auto insurance. And, following their divorce, Richard used Hannibal Media funds to pay Patricia spousal support. On this record, substantial evidence supported a finding that Hannibal Classics and Hannibal Media were business conduits for Richard and Patricia, and therefore Hannibal Media (together with Hannibal Classics, Richard, Patricia, USSIP, and Marco Polo) controlled the litigation such that the court did not err in adding Hannibal Media as a judgment debtor.[15]

---

[15] Hannibal Media also argues it was error to add it as a judgment debtor to both judgments because due process considerations preclude adding a third party to a default judgment. We reject this argument because the judgment here was not obtained by default (cf. *Motores de Mexicali, S. A. v. Superior Court of Los Angeles County* (1958) 51 Cal.2d 172, 176), but entered following a bench trial.

F.    *Damages Calculation*

Defendants next contend that the trial court's damages award in both cases was "patently unreasonable," and "implicate usury laws."  We disagree.

For the USS Indianapolis case, the trial court calculated damages to be $19,807,792.35, consisting of:  for the fraud and breach of contract claims, $5,607,536 of the unpaid loan, and, based on the financing agreement provisions for interest, finance charges, and preferred return rates, an additional $13,556,559.35; and, for the conversion claim, $643,697.  The court also found that in the Vengeance film case, plaintiffs were entitled to damages in the amount of $2,749,387.60, consisting of: the unpaid $1,433,712 minimum guaranteed payments; prejudgment interest in the amount of $430,113.60; and finance charges for defendants' unlawful retention of the funds, $885,562.

Defendants do not challenge the trial court's calculation of damages under the terms of the operative financing and sales agency agreements.[16]  Instead, they contend that the total amount of damages, when compared to the amount of the loan outstanding in the USS Indianapolis case results in "341.756% of the principal amount [of $5,607,536]" and therefore "implicate usury laws and/or constitute unforeseeable penalties, which are

---

[16]    Although defendants assert that the damages award is "[u]nsupported by the facts," they do not raise a sufficiency of the evidence claim on appeal.  Accordingly, any such argument is waived.  (See *Shiheiber v. JPMorgan Chase Bank, N.A.* (2022) 81 Cal.App.5th 688, 696 ["'appellate court can treat as waived, forfeited or meritless any issue that, although raised in the briefs, is not supported by pertinent or cognizable legal argument or proper citation of authority'"].)

30

precluded as a matter of law." We reject the contention. Defendants' argument suggests that, in the USS Indianapolis case, plaintiffs loaned defendants $5,607,536 and demanded usurious interest payments in return. But that is an inaccurate description of the relationship among the parties, who had entered into a production and distribution agreement, and the record, which demonstrates that defendants engaged in fraud and misused proceeds that they were obligated to provide to plaintiffs. Further, to the extent defendants suggest that the contracts at issue in this case are void as a matter of law, defendants did not raise that argument in the trial court and have forfeited it on appeal. (See *Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548 [""As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried. This rule is based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal""].)[17]

G.    *Attorney Fees Award*

Defendants also contend that the trial court erred when it awarded attorney fees in the Vengeance film case. Here, the sales agency agreement between Hannibal Classics and plaintiffs for the Vengeance film included an attorney fee provision that

---

[17]    Richard and Patricia also argue that the damages award must be vacated because the court improperly imposed prejudgment interest in the USS Indianapolis film case. The court, however, did not impose any prejudgment interest in the USS Indianapolis film case.

31

provided: "In any action . . . between the parties relating to this Agreement, the enforcement of any of its terms or to any other contract relating to the subject matter of this Agreement, the prevailing party shall . . . be entitled to reasonable outside attorney's fees, costs, and expenses as they may be fixed by the court . . . ."

Defendants do not dispute that Hannibal Classics would be liable for the payment of attorney fees. Instead, they contend that, because in the Vengeance film case, plaintiffs entered into a contract with Hannibal Classics, and Hannibal Classics could not be found liable due to the bankruptcy stay, neither Richard nor Patricia could be liable as alter egos of Hannibal Classics. We have rejected this argument above.

Defendants also contend that because the second amended complaint did not name Patricia as an alter ego of Hannibal Classics for the breach of contract claim, the award of attorney fees could not be imposed against her. We disagree with defendants' interpretation of the operative complaint. Although the breach of contract claim listed only Hannibal Classics and Richard as defendants in the heading to that claim, the body of the claim itself alleged: "In breach of the Vengeance [sales agency agreement], Hannibal, acting at the direction of [Richard] and Patricia, sent invoices to the foreign distributors directing them to pay the distribution proceeds . . . to either Hannibal's or Marco Polo's bank accounts, and not to the collection account"; and "[m]oreover, as the alter egos of Hannibal, [Richard] and Patricia are responsible for its breaches." Thus, plaintiffs sufficiently alleged the breach of contract claim against Patricia. (See also *Board of Trustees v. Superior Court* (2007) 149 Cal.App.4th 1154, 1163 ["It is well established that 'California

32

courts have "a policy of great liberality in allowing amendments at any stage of the proceeding so as to dispose of cases upon their substantial merits where the authorization does not prejudice the substantial rights of others""'].)  In any event, the operative complaint here also alleged tort claims, namely, the conversion and fraud claims against Patricia as an alter ego of Hannibal Classics.  And, the attorney fee provision at issue here was sufficiently broad to allow for recovery of attorney fees on the tort claims.  (See *Moallem v. Coldwell Banker Com. Group, Inc.* (1994) 25 Cal.App.4th 1827, 1831 ["relating to" is sufficiently broad to allow recovery of attorney fees for tort and contract claims].)  Accordingly, the court did not err in awarding attorney fees in the Vengeance film case.

H.    *Affidavit of Identity and Order*

Richard next argues that we must vacate the trial court's entry of an affidavit of identity and order that listed as Richard's alternate identities:  Richard as the Trustee of the RDCR Trust; and the RDCR Trust.

1.    Relevant Additional Background

As noted, on June 27, 2022, plaintiffs submitted to the trial court an affidavit of identity and order in the USS Indianapolis film case.  Among other things, plaintiffs' counsel asserted that Richard solely owned and operated the RDCR Trust, and that he "has used the RDCR name to acquire and hold assets, and avoid potential creditors."  Specifically, counsel explained that, on May 22, 2019, while this litigation was pending, Richard and

33

Patricia, by quit claim deed, transferred real property located in West Hollywood to the RDCR Trust. The RDCR Trust then sold the property to a third party on November 18, 2021. Plaintiffs submitted deed records and a grant deed reflecting the sale in support.

On July 1, 2022, the trial court ordered "that the identification of the judgment debtor [Richard] shall include" the additional names listed in plaintiffs' affidavit of identity and that "those names may be added to any writ of execution . . . ."

On July 15, 2022, Richard filed a motion to vacate the affidavit of identity. Richard argued that the RDCR Trust was not a new name or alias of Richard because it was an irrevocable spendthrift trust, to which Richard was a "signatory." Although Richard did not include a copy of the trust in his declaration, he asserted that it included a Nevada choice of law provision, included Richard's four-year old son as a beneficiary, and was dated January 11, 2018. On August 18, 2022, the trial court denied the motion.

On August 24, 2022, plaintiffs submitted an application for issuance of a writ of execution, possession, or sale in the USS Indianapolis film case. The application listed as additional names for Richard the RDCR Trust and Richard as trustee of the RDCR Trust.

2.      Applicable Law

An affidavit of identity is "an affidavit or declaration executed by a judgment creditor, under penalty of perjury, that is filed with the clerk of the court in which the judgment is entered at the time the judgment creditor files for a writ of execution or

34

an abstract of judgment." (§ 680.135.)  Section 680.135 requires that the affidavit set forth "the additional name or names by which the judgment debtor is known, and the facts upon which the judgment creditor has relied in obtaining the judgment debtor's additional name or names.  The affidavit of identity shall not include the name or names of persons, including any corporations, partnerships, or any legal entities not separately named in the judgment in which the judgment debtor is a partner, shareholder, or member, other than the judgment debtor."  (*Ibid*.)

3.    Analysis

Richard does not dispute that he is the settlor of the RDCR Trust, that he created the trust on January 11, 2018, while this litigation was pending[18], or that he transferred the proceeds of the sale of the West Hollywood property into the trust.  Instead, he argues that the trial court erred in failing to vacate the affidavit of identity and order because:  the RDCR Trust is a valid spendthrift trust that includes his son as a beneficiary and is therefore a "new" judgment debtor, and cannot be included in an affidavit of identity pursuant to section 680.135; the order on the affidavit of identity was in excess of the trial court's jurisdiction under section 709.010, subdivision (b); and the order on the affidavit of identity was issued in violation of section 699.720, subdivision (a)(8). """The proper interpretation of a

---

[18]    Although the parties proceeded to trial on the operative complaints, which were filed in 2018, plaintiffs filed their initial complaint in the Vengeance film case on October 25, 2017, and in the USS Indianapolis film case on December 21, 2017.

statute, and its application to undisputed facts, presents a question of law that is . . . subject to de novo review.'" [Citations.]" (*Bitner v. Department of Corrections & Rehabilitation* (2023) 87 Cal.App.5th 1048, 1058.) We review the trial court's resolution of any disputed facts for substantial evidence. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581–582.)

"A spendthrift trust is a trust that provides that the beneficiary's interest cannot be alienated before it is distributed to the beneficiary. Creditors of the beneficiary generally cannot reach trust assets while those assets are in the hands of the trustee, even if they have secured a judgment against the beneficiary. Rather, creditors must wait until the trustee makes distributions to the beneficiary. The law permits such trusts because donors have 'the right to choose the object of [their] bounty' and to protect their gifts from the donees' creditors." (*Carmack v. Reynolds* (2017) 2 Cal.5th 844, 849.)

Richard's argument is premised on his assertion that the RDCR Trust is a valid spendthrift trust, to which Richard's son is a beneficiary, such that its assets cannot be reached by plaintiffs. But Richard cannot demonstrate either that the RDCR Trust is a valid spendthrift trust or that his son is a beneficiary because Richard did not provide a copy of the trust to the trial court and it is not part of our record on appeal. Although he submitted a declaration to support his assertion, the court was not required to credit the declaration. Indeed, on appeal, we apply "the doctrine of implied findings, meaning that we presume the trial court 'made all factual findings necessary to support the judgment for which substantial evidence exists in the record.'" (*LSREF2 Clover Property 4, LLC v. Festival Retail Fund 1, LP* (2016) 3

36

Cal.App.5th 1067, 1076.)  Here, we presume that the court impliedly found that Richard's declaration regarding the validity of the spendthrift trust was not credible.  (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479.)

We next consider Richard's contention that sections 699.720, subdivision (a)(8) and 709.010, subdivision (b) proscribe the trial court's act of ordering the affidavit of identity and the aliases therein to be subject to writs of execution.  Section 699.720, subdivision (a)(8) provides that "[t]he interest of a trust beneficiary" is not subject to execution.  Section 709.010, subdivision (b) provides, in relevant part, that "[t]he judgment debtor's interest as a beneficiary of a trust is subject to enforcement of a money judgment only upon petition under this section by a judgment creditor to a court having jurisdiction over administration of the trust . . . ."  We are unpersuaded by Richard's argument.

The above sections apply when a judgment creditor seeks to enforce a money judgment against a debtor's interest as a *beneficiary* of a trust.  Here, the record demonstrates that plaintiffs are not seeking Richard's interest as a beneficiary of a trust to satisfy a money judgment.  Indeed, Richard does not declare that he is a beneficiary of the RDCR Trust, describing himself only as a "signatory."[19]  Sections 699.720, subdivision (a)(8) and 709.010, subdivision (b) thus do not apply.

---

[19]     As we discuss above, we assume the trial court found Richard's declaration regarding the validity of the trust to be not credible.  Even assuming, however, that the RDCR Trust exists and Richard is a beneficiary of the RDCR Trust, the record demonstrates that he is also a settlor of the trust, and none of the statutes Richard cite prevent the involuntary transfer of a

## IV.    DISPOSITION

The judgments and postjudgment orders are affirmed. Plaintiffs are awarded their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

BAKER, Acting P. J.

MOOR, J.

---

settlor's interest in a spendthrift trust.  To the contrary, "[i]f the settlor is a beneficiary of a trust created by the settlor and the settlor's interest is subject to a provision restraining the voluntary or involuntary transfer of the settlor's interest, the restraint is invalid against transferees or creditors of the settlor. The invalidity of the restraint on transfer does not affect the validity of the trust."  (Prob. Code, § 15304, subd. (a).)